**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DAVID GRITZ, individually and on behalf of all others similarly situated, ) ) ) | Case No.: |
| *Plaintiff,* ) ) | **COMPLAINT – CLASS ACTION** |
| v. ) ) | **DEMAND FOR JURY TRIAL** |
| LENDTUIT HOLDING CORPORATION, a California corporation, FINANCE STORE, INC., a Nevada corporation, FINANCE AGENTS, INC., a California corporation, and TIMOTHY "TIM" MCCORMACK, individually, ) ) ) ) ) ) ) | |
| *Defendants.* ) ) ) | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff David Gritz ("Plaintiff" or "Gritz") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendants Lendtuit Holding Corporation, Finance Store, Inc., Finance Agents, Inc., and Timothy McCormack (collectively, "Defendants"), to stop their practice of making unsolicited telemarketing calls to cellular telephone users and to obtain redress for all such persons injured by their conduct. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

## NATURE OF THE ACTION

1.       Defendant Lendtuit Holding Corporation ("Lendtuit") is a California business funding company.

2.       Defendant Finance Store, Inc. ("Finance Store") is a Nevada corporation that provides loans to various businesses.

3.       Defendant Finance Agents, Inc. ("Finance Agents") is a California marketing lead generator corporation.

4.      Defendant Timothy McCormack ("McCormack") is the founder, President and CEO of Lendtuit Holding Corporation.[1]

5.      On information and belief, Defendant Timothy McCormack personally runs and controls Lendtuit Holding Corporation, Finance Store, Inc., and Finance Agents, Inc.

6.      Unfortunately for consumers, Defendants cast their marketing net too wide in their effort to generate leads for their business loans. That is, Defendants routinely call telephone numbers of individuals with whom they have no relationship whatsoever, and, more particularly, who have not given Defendants their prior express written or oral consent to be called. On information and belief, Defendants have acquired telephone numbers from public records and have not "scrubbed" or checked for the consent of owners of cellular telephone numbers from their autodialing list.

7.      Thus, in an attempt to promote Lendtuit's business and generate leads for its business lending, Defendants conducted and continue to conduct a wide-scale telemarketing campaign that features the making of repeated unsolicited phone calls to consumers' cellular telephones without their express consent or prior knowledge. By autodialing such numbers without express consent, Defendants Lendtuit, Finance Store, Inc., Finance Agents, Inc., and Timothy McCormack collectively routinely violate the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

8.      By making the telephone calls at issue in this Complaint, Defendants caused Plaintiff and members of the Classes actual harm and cognizable legal injury. The harm includes the aggravation, nuisance, and invasions of privacy that result from the receipt of such calls, in addition to the cognizable loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls.

9.      Congress enacted the TCPA to protect consumers from unsolicited and annoying telephone calls, specifically akin to those alleged made by Defendants in this case. In response to

---

[1] https://www.linkedin.com/in/timmccormack

Defendants' unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendants to cease all unsolicited telephone calling activities to consumers as complained of herein. Additionally, Plaintiff seeks an award of statutory damages in favor of the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

## PARTIES

10.     Plaintiff David Gritz is a natural person, a citizen of the State of Pennsylvania, and a resident of Lehigh County.

11.     Defendant Lendtuit Holding Corporation is a California business funding company located at 2040 Main St., Suite 175, Irvine, CA 92614. Lendtuit regularly transacts business in this State and throughout the United States.

12.     Defendant Finance Store, Inc. is a Nevada corporation registered in California and is located at 200 Sandpointe Ave. Suite 750, Santa Ana, CA 92707. Upon information and belief, Finance Store regularly transacts business in this District.

13.     Defendant Finance Agents, Inc. is a California marketing lead generator corporation headquartered at 2040 Main St. Suite 175, Irvine, CA 92614.

14.     Finance Agents, a global affiliate marketing company, is "the outside sales and marketing arm of Defendant Finance Store, Inc."[2] Finance Agents' Terms of Service for new agents clearly indicates this relationship by stating: "Following are the Terms of Service that you agree to when you sign up with The Finance Store as a Finance Agent."[3]

15.     Defendant Timothy McCormack is an individual, and the founder, President, and CEO of Lendtuit Holding Company since October 2015. McCormack previously served as President of Finance Store, Inc. for seven (7) years and eight (8) months, from March 2008 until October 2015.

---

[2] https://www.linkedin.com/in/darrenmcneil
[3] http://financeagents.com/terms-of-service/

16.     Based on publically available information, it is believed that Defendant Timothy McCormack continues to exercise personal control of Defendant entities Lendtuit, Finance Store, Inc., and Finance Agents, Inc., including overseeing operations and telemarketing.

17.     The websites of Defendants Lendtuit, Finance Store, and Finance Agents (lendtuit.com, financestore.com, and financeagents.com) share the same IP address, which is registered to McCormack.

18.     Further, Finance Store, Inc., is the Registrant Organization for financeagents.com.[4]

19.     Following McCormick's departure, Finance Store, Inc. has not registered a new chief executive or officer with the State of California.

20.      In fact, McCormack states in a current online profile, "I am responsible for business development, product development, and technology development" at Finance Store.[5]

21.     On information and belief, the Defendants acted together for the purposes of making the unsolicited telemarketing calls at issue in this case, and that corporate formalities were not observed such that the Defendant companies are joint actors and alter egos of one another.

### JURISDICTION AND VENUE

22.     This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as this action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, a federal statute.

23.     This Court has personal jurisdiction over Defendants because they routinely solicit significant consumer business in this District, and the unlawful conduct alleged in this Complaint occurred in, was directed to, and/or emanated from this District.

---

[4] *Ibid.*
[5] https://www.linkedin.com/in/timmccormack

24.     Venue is proper in the District under 28 U.S.C. § 1391(b) because Defendants routinely transact business within this District and because the wrongful conduct giving rise to this case occurred in, was directed to, and/or emanated from this District.

25.     On information and belief, Defendant Tim McCormack directly and personally participated in, directed and/or authorized, and ratified the conduct constituting the statutory violations alleged herein. On information and belief, Defendant Timothy McCormack established and/or approved the telemarketing policies of Defendants Lendtuit, Finance Store, Inc., and Finance Agents, Inc., oversaw their operations, and was directly involved in the business practices of Defendants that violated TCPA.

## COMMON FACTUAL ALLEGATIONS

26.     Lendtuit is a business funding holding corporation formed on December 8, 2015. Lendtuit's website claims that it provides business loans, and its mission is to "help every business owner obtain the funding they need to pursue their dreams. We've helped more than ten thousand entrepreneurs overcome financial obstacles and see their business grow."[6] Assisting over ten thousand customers in a relatively short period of time indicates that Lendtuit uses aggressive methods to obtain new clients.

27.     Unfortunately for consumers, Defendants utilized, and continue to utilize, systems to scrape, store, and/or produce telephone numbers from public information sources for the purpose of making telemarketing calls to such phone numbers to advertise their lending services, often calling consumers on their cellular telephones.

28.     In doing so, Defendants and/or its authorized agents use sophisticated systems to call these telephone numbers aggressively, using equipment with the capacity to store or produce telephone numbers and dial them, *en masse*, without any need for human intervention. Such equipment qualifies as an automatic telephone dialing system ("ATDS") under the TCPA.

---

[6] http://lendtuit.com/

5

29.     In Defendants' overzealous attempts to market their services, Defendants placed, and continue to place, phone calls to consumers who never provided express consent to be called and to consumers with whom they had absolutely no prior dealings or relationship.

30.     Defendants seek to generate leads for their funding to business owners. However, Defendants do not appear to use adequate safeguards, such as number verification or database scrubbing, to ensure that they call the correct parties or that they have the requisite consent to call certain numbers. Defendants have also failed to appropriately segment their call list between landline and cellular phone numbers. As a result, Defendants have called cellular phone numbers with ADTS equipment without the called parties' prior written express consent, which is expressly prohibited by the TCPA.

31.     The TCPA is intended to give consumers control over how and from whom they receive autodialed telemarketing calls. When Defendants and/or their authorized agents incessantly autodialed incorrect or independently "discovered" phone numbers without prior express consent, they not only invaded the privacy of Plaintiff and members of the putative Class, but also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF GRITZ

32.     Plaintiff has never been a customer of Defendants, never sought business funding from Defendants, and has never provided Defendants with his cellular phone number nor his prior express written or oral consent to receive autodialed calls.

33.     Beginning on February 5, 2016, Lendtuit and/or its agents began calling Plaintiff's private cell phone as many as three times per day, typically from the number 917-722-0909.

34.     On Wednesday, February 10, 2016, Defendant Lendtuit called Plaintiff's cell phone at 10:16 a.m., 1:42 p.m., and 4:26 p.m. Defendant Lendtuit continued making calls to Plaintiff's cell phone the following morning, February 11, 2016, at 9:14 a.m. and again at 10:35

a.m. When Plaintiff answered these calls, he would hear a long delayed pause, no one spoke, and then the call hung up, which indicates the use of predictive dialer technology.

35.     On February 11, 2016, Plaintiff tried to call 917-722-0909 to request that the calls stop, but Plaintiff was automatically put on hold. Plaintiff heard the message, "Call is very important, will be transferred to the next agent," and then the call system hung up on Plaintiff.

36.     Plaintiff called the number again on February 13, 2016, in an effort to stop the calls. Again, Plaintiff automatically was put on hold and heard, "Call is very important, will be transferred to the next agent," and then the call system hung up on Plaintiff.

37.     Between February 5, 2016, and February 17, 2016, Plaintiff received at least ten (10) additional calls, including five calls in a 24-hour period.

38.     On February 17, 2016, Plaintiff's call finally connected and he spoke with an agent at the company making the calls. The agent stated the company was named Lendtuit and that it was based in New York and California.

39.     While on the call with the Lendtuit agent, Plaintiff asked how Lendtuit obtained his information and whether he had ever submitted his information to Lendtuit. The Lendtuit agent answered "no," and replied that they had found his phone number from public records.

40.     The Lendtuit representative told Plaintiff that Defendants offered business loans and then solicited a business loan to Plaintiff. Plaintiff told the Lendtuit agent that he was not interested in a business loan and politely asked the agent not to call him again.

41.     Defendants and/or their authorized agents initiated the calls to Plaintiff's cellular phone number while using an automatic telephone dialing system without Plaintiff's prior express written consent.

42.     Defendants knew that they, and/or their agents, used an automatic telephone dialing system to initiate calls without telephone owners' consent and that they were calling cellular phone numbers obtained from public sources. As such, Defendants knowingly and repeatedly violated the TCPA.

## CLASS ACTION ALLEGATIONS

43.     Plaintiff brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), on behalf of himself and a Class of similarly situated individuals (the "Class"), defined as follows:

> **Autodialed No Consent Class**: All persons in the United States who (1) from the last four years through the present; (2) Defendants (or a third person acting on behalf of Defendants) called on the person's cellular telephone number; (3) using an automatic telephone dialing system; (4) for the purpose of selling Defendants' products and services; (5) where Defendants claim that they obtained prior express consent to call the persons in the same manner as Defendants claim they obtained prior express written consent to call the Plaintiff.

44.     The following are excluded from the Class: (1) any Judge or Magistrate residing over this action and members of their families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the Class Definition following the completion of discovery regarding the size and scope of the Class.

45.     **Numerosity**: The exact number of members in the Class is unknown at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendants have called thousands of consumers who fall into the definition of the Class. Further, Class members can be easily identified through Defendants' records.

46.     **Commonality**: There are many questions of law and fact common to the claims of Plaintiff and the Class that may be answered in a single stroke. Common questions for the Class includes, but is not necessarily limited to, the following:

(a)     Whether Defendants' conduct violated the TCPA;

(b)     Whether Defendants systematically made telephone calls to individuals

8

who did not previously provide Defendants and/or its agents with their prior express consent to receive such phone calls;

(c)     Whether Defendants made the calls with the use of an ATDS; and

(d)     Whether members of the Class are entitled to treble damages based on the willfulness of Defendants' conduct.

47.     **Typicality**: Plaintiff's claims are typical of the claims of other members of the Class, in that Plaintiff and the members of the Class sustained damages arising out of Defendants' uniform wrongful conduct and unsolicited phone calls.

48.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class and has retained counsel competent and experienced in complex class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiff.

49.     **Policies Generally Applicable to the Classes**: This Class Action is appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the members of the Class as a respective whole. Therefore, the Action requires the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class, thus making final injunctive relief appropriate with respect to the Class as a respective whole. Defendants' practices challenged herein apply to and affect each member of the Class uniformly. Plaintiff's challenge of those practices hinges on Defendants' conduct with respect to the Class as a respective whole, and not on facts or law applicable only to Plaintiff.

50.     **Predominance:** The common issues of law and fact present in this case go to the very heart of the matter and are likely to drive the resolution of the litigation. Such issues will be proven using class-wide, common evidence. Such issues predominate over any issues supposedly affecting individual Class members.

51.     **Superiority & Manageability**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy, given that joinder of all parties is impracticable. The damages

suffered by the individual members of the Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' actions. Thus, it would be virtually impossible for the individual members of the Class and Subclass to obtain effective relief from Defendants' misconduct. Even if members of the Class could sustain such individual litigation, it would still not be preferable to a class action. This is because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions ensured.

## CAUSE OF ACTION
### Violation of 47 U.S.C. § 227
### (On behalf of Plaintiff and the Autodialed No Consent Class)

52.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

53.     Defendants made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class— without their prior express oral or written consent—in an effort to advertise Defendants' lending services.

54.     Defendants made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendants utilized equipment that made the telephone calls to Plaintiff and other members of the Class simultaneously and without human intervention. Such equipment constitutes an ATDS under the TCPA.

55.     By making unsolicited telephone calls to Plaintiff and Class member's cellular telephones without prior express consent, and by utilizing an ATDS, Defendants violated 47 U.S.C. § 227(b)(1)(A)(iii).

10

56.     As a result of Defendants' unlawful conduct, Plaintiff and the members of the Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

57.     In the event that the Court determines that Defendants' violations of the TCPA were willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff David Gritz, individually and on behalf of the Classes, prays for the following relief:

A.     An order certifying the Classes as defined above, appointing Plaintiff David Gritz as the representative of the Class, and appointing his counsel as Class Counsel;

B.     An award of actual and statutory damages to the fullest extent allowable under the TCPA;

C.     An injunction requiring Defendants and their agents to cease all unsolicited telephone calling activities and to provide a domestic number for opting out of receiving calls, and otherwise protecting the interests of the Class and Subclass.

D.     A declaratory judgment declaring that Defendants' calls violated the TCPA, that Defendants' equipment constitutes an automatic telephone dialing system under the TCPA, and that Defendants failed to obtain prior express written consent to call Plaintiff and the other members of the Class;

E.     An award of reasonable attorneys' fees and costs; and

F.     Such other and further relief that the Court deems reasonable and just.

## TRIAL BY JURY

Pursuant to Federal Rules of Civil Procedure 38(b), Plaintiff hereby demands a trial by jury.

Dated this 29th day of March, 2016.

Respectfully submitted,
**DAVID GRITZ**, individually and on behalf of all others similarly situated,

By:    /s/ Barry L. Cohen

Barry Cohen
(bcohen@rccblaw.com)
Royer Cooper Cohen Braunfeld LLC
101 W. Elm Street, Suite 220
Conshohocken, PA 19428
Telephone: 484-362-2628
Facsimile: 484-362-2630

Steven L. Woodrow*
(swoodrow@woodrowpeluso.com)*
Patrick H. Peluso
(ppeluso@woodrowpeluso.com)*
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

Stefan Coleman*
(Law@StefanColeman.com)
LAW OFFICES OF STEFAN COLEMAN, LLC*
201 S. Biscayne Blvd, 28th Floor,
Miami, Fl 33131
Telephone: (877) 333-9427
Facsimilie: (888) 498-8945

*pro hac vice admission to be filed

Attorneys for Plaintiff David Gritz and the proposed Class